UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JERALDINE BACOTE, | ) | Civil Action No.: 4:13-cv-1516-BHH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| AGAPE COMMUNITY HOSPICE OF | ) | |
| THE PEE DEE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.     INTRODUCTION

Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq., alleging Defendant discriminated against her because of her race and retaliated against as a result of her complaints to that end. Presently before the court is Defendant's Motion for Summary Judgment (Document # 39). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. This report and recommendation is entered for review by the district judge.

## II.    FACTS

Plaintiff was a certified nursing assistant (CNA) for Defendant Agape Community Hospice of the Pee Dee, Inc. (Agape Hospice) from October of 2009 until May 16, 2012. Pl. Dep. 19, 30 (Ex. A to Def. Motion). In May of 2012, Agape Hospice reassigned patients to CNAs in an effort to reduce mileage reimbursements being paid to CNAs for traveling to the patients' homes. Pl. Dep. 25-27. The reassignment of patients resulted in a lower mileage reimbursement for Plaintiff. Pl. Dep. 27. In response to Plaintiff's Charge of Discrimination, Defendant represented to the Human Affairs Commission that John Griggs, the Executive Director for Defendant's Florence and Hartsville Offices, and Amanda Isgett, the Patient Care Coordinator and Plaintiff's direct supervisor,

made the decision to reassign patients. Defendant Statement to Human Affairs Commission (Ex. D to Pl. Response). However, both Griggs and Isgett deny making the decision. Griggs Aff. ¶ 3 (Ex. E to Pl. Response); Isgett Dep. 10, 30 (Ex. C to Pl. Response).

Prior to the reassignment, neither Griggs nor Isgett were aware of any disciplinary issues with Plaintiff. Griggs Aff. ¶ 7; Isgett Dep. 10, 30. Griggs avers that he received "numerous compliments and accolades" about Plaintiff. Griggs Aff. ¶ 8. Isgett testified that she had worked "out in the field" with Plaintiff and she knew that Plaintiff went "above and beyond." Isgett Dep. 16-17. After the reassignment, Isgett issued a corrective action form to Plaintiff stating that some of Plaintiff's previously assigned patients had called with complaints:

> Previous patients have called & informed staff you called to inform them of the changes but while doing so you informed them that the other CNA's would not do a good job or be on time. You requested these PCG/pt to call the office and demand you be given back to care for the pt. Also D. S****'s PCG called to inform staff that you informed them you had a bad back & could not care for her. Mr. M**** informed pt's nurse that Geraldine (sic) has been staying all 30-45 mins but hasn't been doing any house work or helping him at all.

Employee Corrective Action Form dated May 8, 2012 (Ex. B to Def. Motion).

As a result, Plaintiff was placed on probation for sixty days. Pl. Corrective Action Form dated May 8, 2012. After placing Plaintiff on probation, Isgett made a notation regarding additional complaints from patients regarding Plaintiff:

> Several more complaints related to patient care, poor attitude and refusing to do light housekeeping were received the morning following Geraldine (sic) being placed on 60 day probation.
>
> Mr. M**** informed staff that Geraldine (sic) was very rude to him, refused to shave him but when she did she hurt him by putting too much pressure on the razor. Mr. M**** stated that she wasn't there more than 30 minutes but while she was there Geraldine only sat and watched TV and refused to do any house work. After being informed that Geraldine (sic) only stayed at patient's house no more than 30 minutes, I reviewed the HHA time sheets and saw where a hour was being placed.
>
> D**** S**** called with complaints that Geraldine (sic) could not take care of her because she was too large because Geraldine (sic) stated she had a hurt back. Mrs.

-2-

> S.**** stated that after several times of being informed of the correct way she liked to be bathed, Geraldine (sic) refused stating that she would wash Mrs. S*** the way she washed all her patients. Mrs. S*** and her sister/PCG were very upset and stated that the patient's female parts were not washed and she started to smell. Another CNA was demanded to continue with our services.

Employment File Notation (Ex. D to Def. Motion); Isgett Dep. 6-7.

On May 16, 2012, Plaintiff, along with a co-worker, Patsine Blount-Ferguson[1], was called to a meeting with her supervisors. Pl. Dep. 65. At that meeting, Plaintiff was informed of the complaints made against her, and discussed them with her supervisors. Pl. Dep. 65. She was shown an Employee Corrective Action Form, outlining the complaints and notifying her of her termination, which she refused to sign. Pl. Dep. 67-68; Employee Corrective Action Form dated May 16, 2012 (Ex. E to Def. Motion). The form states the Plaintiff was terminated for "Poor customer care, Poor customer service, [and] False verification of time sheets." Employee Corrective Action Form dated May 16, 2012. Plaintiff refused to sign the form because "whatever they had on there, it wasn't right." Pl. Dep. 67. However, she agreed in her deposition that falsification of a time sheet is grounds for termination and poor patient care, including duties involving bathing and light housekeeping, are grounds for employee discipline. Pl. Dep. 64-65, 68-69.

Isgett testified that she did not agree with the decision to terminate Plaintiff. Isgett Dep. 16-17.[2] She was responsible for terminating employees upon the direction of the president, vice president, human resources, and the head of the division. Isgett Dep. 7. She described the process of termination in her deposition:

> [A]nytime anyone was wrote up – from what I can recall, anytime anybody was

---

[1]Ms. Blount-Ferguson has filed a similar action alleging racial discrimination. See Case No. 4:13-cv-1891-RBH-TER.

[2]Isgett states that she separated from employment with Defendant because "I heard that I was going to be terminated 'cause I didn't agree with some of the things that were going on, so I just left." Isgett Dep. 17.

> wrote up, we had to send it to HR. HR will review and then send it out as they see fit. We never knew what was going to come down the pipe until after everybody reviewed it, and then they called us and told us what we had to do. . . . It was our duty to turn in or write up anything that wasn't going as it was supposed to an then turn it into them, and they made a decision, and then sent it back down to us.

Isgett Dep. 8-9.[3] Before the termination process, Isgett was involved in the termination by questioning the patient complainant and would talk to the employer when she was told she could. Isgett Dep. 12. Griggs avers that he was typically made aware of patient complaints by a nurse or the nurse supervisor. Griggs Aff. ¶ 6. He avers that he normally handled such complaints "in house" and did not escalate or send the patient complaints about Plaintiff to Corporate. Griggs Aff. ¶ 9. However, he avers that he did not make the decision to terminate Plaintiff and no one ever asked his opinion on the matter. Griggs Aff. ¶ 11.

## III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. at 322. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48

---

[3] Isgett testified that the same process occurred with respect to other disciplinary action short of termination as well, including being placed on probation. Isgett Dep. 9.

-4-

(1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

**IV.     DISCUSSION**

Title VII makes it "an unlawful employment practice for an employer-(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1).

A plaintiff asserting a claim of unlawful employment discrimination may proceed through two avenues of proof. First, she may establish through direct or circumstantial proof that a protected characteristic such as race was a motivating factor in the employer's adverse decision. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir.2004) (en banc). When

direct evidence is lacking, a plaintiff may proceed under the burden-shifting proof scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this burden-shifting scheme, Plaintiff has the initial burden of establishing a prima facie case of discrimination. Id. To establish a prima facie case of race discrimination in a termination case, the plaintiff must present facts showing that (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) similarly-situated employees outside the protected class received more favorable treatment. White v. BFI Waste Services, LLC, 375 F.3d 288, 295 (4th Cir.2004). The fourth element can also be met by showing other circumstances giving rise to a reasonable inference of unlawful discrimination. Miles v. Dell, Inc., 429 F.3d 480, 486–87 (4th Cir.2005).

If Plaintiff establishes a prima facie case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the disparate treatment. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This is merely a burden of production, not of persuasion. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination vel non." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reason, but was pretext for discrimination. Reeves, 530 U.S. at 143. Throughout the burden shifting scheme set forth in McDonnell Douglas, the ultimate burden of proving that Defendant intentionally discriminated

against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude defendant intentionally discriminated against her.

It is undisputed that Plaintiff is a member of a protected class and that she suffered an adverse employment action.  However, Defendant argues that she fails to meet the last two requirements to establish a prima facie case of race discrimination.  Defendant argues that Plaintiff cannot show that she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action because of the patient complaints regarding the care they were receiving from Plaintiff and because she falsified her time sheets. Plaintiff argues that both Griggs and Isgett testified they never had any problems with Plaintiff prior to the reassignment of patients and that Defendant has presented no evidence that Plaintiff actually falsified her time sheets.  Indeed, except for the short period of time between the reassignment of patients at the beginning of May 2012 and Plaintiff's termination on May 16, 2012, Isgett testified that she could not recall a time when Plaintiff was not performing her duties.  Isgett Dep. 30.  Isgett also testified that, from her experience with Plaintiff, she knew that she "went above and beyond" for her patients.  Isgett Dep. 16-17.  Griggs also averred that Plaintiff was a satisfactory employee and he had no disciplinary issues with her.  Griggs Aff. ¶ 7.  In addition, neither Griggs nor Isgett agreed with the decision to terminate Plaintiff.  An employee's prima facie burden is not onerous and does not require proof of perfect performance. See Brown v. Siemens Healthcare Diagnostics, Inc., No. DKC–11–0769, 2012 WL 3136457, at *7 (D.Md. July 31, 2012) (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  Plaintiff has presented sufficient evidence to create an issue of fact with respect to whether she was meeting her employer's legitimate expectations.

Defendant also argues that Plaintiff fails to present evidence sufficient to show that a

similarly-situated employee outside of Plaintiff's protected class was treated differently. To be similarly situated, a "plaintiff must establish that 'other employees' were similarly situated in all relevant respects; that they 'dealt with the same supervisor, [were] subject to the same standards and ... engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" See Ward v. City of North Myrtle Beach, 457 F.Supp.2d 625, 643 (D.S.C.2006). Although Plaintiff need not establish exact similarity, see Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir.1993), "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." Lightner v. City of Wilmington, 545 F.3d 260, 265 (4th Cir.2008).

  Initially, it is not clear from the record who made the decision to discipline Plaintiff. Nevertheless, she points to two Caucasian co-workers she alleges were treated differently than her. First she mentions J.T. and states that he was placed on probation by Isgett for 60 days and was given that time to improve his "major infraction." AGAPE Statement (Ex. D to Pl. Response). However, Plaintiff presents no evidence of the major infraction committed by J.T. or whether, like with Plaintiff, Isgett learned of additional patient complaints while he was on probation. Thus, the evidence presented with respect to J.T. is insufficient to create an issue of fact. Plaintiff also points to Michelle "Starr" Harris, another CNA, who received a complaint against her by a patient's family member. Harris Dep. 20 (Ex. F to Pl. Response). Harris went to a patient's house to speak with the patient's daughter, believing that the daughter wanted to speak with her. Harris Dep. 12-13. The daughter asked Harris to leave, stating that she did not want to speak with her, and then call Isgett to complain. Harris Dep. 12-13. Isgett called Harris into her office to discuss the complaint but did not complete a Corrective Action Form because Harris explained that it was just a misunderstanding. Harris Dep. 12-13. Harris told Plaintiff that Isgett believed her over the daughter. Harris Dep. 17-18. Thus, Plaintiff argues, Isgett treated Harris differently than she did Plaintiff because she did not

-8-

allow Plaintiff the opportunity to explain herself before issuing a Corrective Action Form. Defendant argues that Harris was not similarly situated because she did not falsify her time sheet. However, the first incident for which Plaintiff was disciplined arose out of patient complaints, and Plaintiff was treated differently in that respect. This evidence is sufficient to create an issue of fact with respect to whether Defendant treated similarly-situated employees differently. See Moore v. City of Charlotte, 754 F.2d 1100, 1107 (4th Cir. 1985) (stating that "precise equivalence in culpability between employees is not the ultimate question"). As such, Plaintiff has met her burden of establishing a prima facie case of race discrimination, and the burden shifts to Defendant to produce a legitimate, non-discriminatory reason for Plaintiff's termination.

     Defendant asserts that Plaintiff was terminated for patient complaints and for falsifying her time sheet. Plaintiff agrees that falsification of time sheets is grounds for termination. However, she argues that this reason for her termination was pretext for a discriminatory reason. Plaintiff has presented sufficient evidence to create an issue of fact here. First, as discussed above, a white CNA who received a complaint against her was given an opportunity to discuss the complaint with Isgett prior to any action being taken against her. Conversely, Plaintiff was placed on probation as a result of patient complaints prior to being notified of the complaints and was later terminated as a result of allegations that she falsified her time sheet prior to notifying Plaintiff of these allegations and allowing her an opportunity to discuss them. Harris, Plaintiff's white co-worker, specifically told Plaintiff that Isgett believed her side of the story compared to the complainant, but Plaintiff was never allowed to give her side of the story. In addition, Isgett testified that she always sent patient complaints up the chain of command. However, there is no evidence that she did that with respect to the complaint against Harris. Furthermore, Harris previously wrote and signed a statement that she was never called into the office by Isgett for any complaint, but she later admitted in her deposition that she "didn't want to get pulled into this" and she signed the statement to "get out of

-9-

it." Harris Dep. 21.

In addition, Defendant has offered conflicting evidence as to who made the decision to terminate Plaintiff's employment. In response to Plaintiff's complaint to the Human Affairs Commission, Defendant provided a statement that both Griggs and Isgett made the decision to discharge Plaintiff. AGAPE Statement. However, both Griggs and Isgett deny making the decision. Isgett stated that she was responsible for terminating employees upon the direction of the president, vice president, human resources, and the head of the division. Isgett Dep. 7. She stated that when she had an issue with an employee, she was responsible for writing it up and submitting it to human resources, who would then pass the information along as they saw fit, and Isgett simply waited for instructions on how to proceed. Isgett Dep. 8-9. She also testified that she had always known Plaintiff to go "above and beyond" and did not agree with the decision to terminate Plaintiff's employment, but "that wasn't my decision to make." Isgett Dep. 16-17. Griggs stated that he also did not make the decision to terminate Plaintiff and that he was simply asked to sit in as a witness when Isgett terminated her. Griggs Aff. ¶ 11. He stated that the decision to terminate Plaintiff had already been made and he was never asked his opinion. Griggs Aff. ¶ 11. He averred that the termination was "unfortunate" and he was "appalled" that someone would terminate Plaintiff. Griggs Aff. ¶ 13. Neither Griggs nor Isgett are currently employed with Defendant. Isgett testified that she separated from employment with Defendant because "I heard that I was going to be terminated 'cause I didn't agree with some of the things that were going on, so I just left." Isgett Dep. 17.

Defendant argues that the question of who disciplined and terminated Plaintiff is irrelevant. However, this conflict in the record, in addition to the absence of any past performance issues with Plaintiff and the evidence of disparate treatment between Plaintiff and her Caucasian co-worker, Harris, is sufficient to create an issue of fact as to whether the reasons given for Plaintiff's disciplinary decisions are pretext for discriminatory reasons. See Reeves, 530 U.S. at 147 (citing

-10-

St. Mary's Honor Center, 509 U.S. at 517) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."). Therefore, summary judgment is not appropriate on Plaintiff's race discrimination claim. Plaintiff also asserts a claim of retaliation. However, Defendant has not moved for summary judgment on that claim. Thus, it is recommended that this case proceed forward as to both claims.

## V.    CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion for Summary Judgment (Document # 39) be denied.

                                              s/Thomas E. Rogers, III
                                             Thomas E. Rogers, III
                                             United States Magistrate Judge

December 23, 2014
Florence, South Carolina